

ELECTRONICALLY FILED
4/20/2012 11:09 AM
CV-2012-900026.00
CIRCUIT COURT OF
TALLAPOOSA COUNTY, ALABAMA
PATTI LUCAS, CLERK

IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
DADEVILLE DIVISION

THOMAS M. HAYLEY and AMY ELIZABETH HAYLEY,

Plaintiffs,

v.

REGIONS BANK, and Fictitious Defendants A, B, & C,

Defendant.

## COMPLAINT

COME NOW the Plaintiffs, Thomas M. Hayley and Amy Elizabeth Hayley, by and through counsel, and complain against Defendant Regions Bank as follows:

## GENERAL FACTS

1. Plaintiff Thomas M. Hayley ("Tom Hayley") is over the age of nineteen, a resident of Lee County, Alabama, and the owner of a home located at 149 Collins Drive, Dadeville, Alabama, which is the subject of this action.

2. Plaintiff Amy Elizabeth Hayley ("Beth Hayley") is over the age of nineteen and a resident of Lee County, Alabama, and the owner of a home located at 149 Collins Drive, Dadeville, Alabama, which is the subject of this action.

3. Defendant Regions Bank ("Regions") is an Alabama corporation doing business in Tallapoosa County at all times material hereto. Fictitious Defendants A, B, and C are those persons and/or entities who were officers, employees, agents, representatives, affiliates, subsidiaries, or parent companies of Regions Bank, or who acted at the behest, direction, or control, of such persons and/or entities, who engaged in the actions alleged herein. The identities of such Fictitious Defendants will be disclosed by amendment to the Complaint when discovered by Plaintiffs.

## NEGLIGENT AND/OR FRAUDULENT MISREPRESENTATION

4. Tom Hayley was solicited by Jake Desee, a local Regions Loan Officer, to establish a customer relationship. On or about November 23, 2005, Tom Hayley executed an Equity Assetline Agreement with lender Regions. The line of credit was secured by a mortgage on the Hayleys' lake home, located at 149 Collins Drive, Dadeville, Alabama. The mortgage was signed by both Tom and Beth Hayley. Copies of the agreement and the mortgage are attached as Exhibit A and Exhibit B respectively.

5. Said loan was scheduled to mature on November 23, 2010. As early as September 10, 2010, Cindy Brooks, an employee of Tom Hayley, contacted Regions to request renewal of the loan.

6. All requested information was timely submitted to Terri Porter, Tom Hayley's contact at

Regions.

7. On March 3, 2011, Cindy Brooks informed Terri Porter via e-mail that the loan was being reported as past due on Tom Hayley's credit report. This was reiterated in an e-mail dated March 24, 2011. Over a period of weeks, Regions employees assured Hayley that the loan renewal would be completed soon.

8. On April 22, 2011, Cindy Brooks informed Rett Moncrief, Regions City President, that Tom Hayley's credit was being negatively affected by Region's delay in completing the loan renewal. Copies of the e-mails referenced in paragraphs 7 and 8 are attached collectively as Exhibit C.

9. Regions negligently and/or fraudulently and wantonly represented to the Hayleys that it intended to renew the loan. Hayley contacted Regions more than two months before the maturity date of the loan and was assured that the loan would be renewed.

10. Regions knew or reasonably should have known at the time of these misrepresentations that they were untrue.

11. The Hayleys reasonably relied on these negligent and/or fraudulent and wanton misrepresentations of material fact to their detriment in that they did not seek to move the loan to another financial institution.

12. The Hayleys were damaged by the misrepresentations of Regions. Additional late fees and default interest accrued as a result of Regions' misrepresentations, and Tom Hayley's credit score was negatively affected.

**SUPPRESSION**

13. Plaintiffs restate and incorporate all previous allegations as if stated herein.

14. Because of their relationship with Tom and Beth Hayley, Regions had a duty to disclose to the Hayleys the material fact that their loan would not be renewed.

15. Despite repeated inquiries by Tom Hayley, Regions wantonly and with wrongful intent, did not disclose the fact that the loan would not be renewed.

16. Because of this wanton and intentional suppression of a material fact, the Hayleys did not pursue moving the loan to another financial institution.

17. The Hayleys were damaged by the wanton and intentional suppression of said material fact. Additional late fees and default interest accrued as a result of Regions' wanton and intentional suppression, and Tom Hayley's credit score was negatively affected.

**DEFAMATION**

18. Plaintiffs restate and incorporate all previous allegations as if stated herein.

19. Defendant has published the false, libelous, and defamatory statement of and concerning Plaintiffs Tom and Beth Hayley, namely that the Hayleys' loan matured without payment. This false negative credit information was reported to the three national credit reporting agencies.

20. In letters dated July 7, 2011 and April 10, 2012, counsel for the Plaintiffs requested that Defendant retract said defamatory statement and mitigate the damages caused by said statement. Regions has not corrected the information reported to the national credit reporting agencies.

21. Plaintiffs were damaged by said false and defamatory statements in that Tom Hayley's reputation has been damaged in the business and financial community. Tom Hayley's credit score has been lowered, and his other business interests and loan relationships with other financial institutions have been harmed. As a result of Defendant's defamatory statements, Tom Hayley's lending costs with other institutions have increased, and Tom Hayley has been denied access to credit necessary for his business and commercial enterprises. Tom and Beth Hayley have suffered extreme emotional distress and mental anguish due to Defendant's defamatory statements.

## INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONS

22.   Plaintiffs restate and incorporate all previous allegations as if stated herein.

23.   Tom Hayley is involved in business and contractual relationships with several businesses and financial institutions.

24.   Regions, through its agents and employees, is aware of the existence of these relationships.

25.   The actions of Regions alleged in this Complaint were intended to injure Plaintiff Tom Hayley by interfering with said relations.

26.   Plaintiffs have been damaged by this interference in that Tom Hayley's credit score has been negatively affected and his business and financial relationships have suffered as a result.

## FAIR DEBT COLLECTIONS PRACTICES ACT

27.   Plaintiffs restate and incorporate all previous allegations as if stated herein.

28.   Defendant has engaged in actions which violate §§ 806(4); 807(8); 807(9); 807(11); 808 (1); and 809 of the Fair Debt Collections Practices Act (15 U.S.C. §1692d through §1692g).

29. Plaintiffs have been damages by such illegal practices as averred hereinabove and are otherwise entitled to statutory damages for each violation, as well as reimbursement of their attorney's fees and costs.

## TEMPORARY INJUNCTION, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

30. Plaintiffs restate and incorporate all previous allegations as if stated herein.

31. As stated previously, Tom and Beth Hayley sought to renew their loan with Regions. While the renewal was pending, the Hayleys continued to make regular payments on the loan each month in excess of the interest accruing after maturity. Despite these timely payments, Regions has filed a Notice of Mortgage Foreclosure Sale. A copy of the notice is attached as Exhibit D.

32. The Hayleys have a reasonable chance of success in proving that the foreclosure sale, which is scheduled to occur on May 1, 2012, cannot be held as the Hayleys have made their regularly scheduled payments and Regions has engaged in deceptive practices which equitably estop Regions from foreclosing on the mortgaging securing the loan. The Hayleys request that the foreclosure sale be permanently enjoined, or, at a minimum, that this Court enjoin the foreclosure sale until a determination of whether Regions may be estopped from foreclosure is made by the Court.

33. The Hayleys have no adequate remedy at law. Monetary damages cannot make the Hayleys whole. The Property is real estate and, thus, is unique. Therefore, the Hayleys' only viable remedy is to enjoin Regions from foreclosing on the Property.

34. Without a temporary restraining order, preliminary injunction or permanent injunction, the Hayleys will be irreparably harmed. The foreclosure sale of the Property has been noticed for May 1, 2012. As of that date, the Hayleys will lose possession of the Property.

35. The benefit of enjoining the foreclosure outweighs any negative impact the restraining order or injunction would have on Regions, and a grant of the injunction is not contrary to the public interest.

36. The Hayleys further assert that a bond may be required as security for this Petition, and it will make available such bond as this Court requires. However, Regions will not be prejudiced and will not suffer a financial loss by delaying the foreclosure sale for the brief period of time that will be needed for this matter to be decided. As a result, the Hayleys request that any bond required by this Court be set at a nominal amount.

WHEREFORE, Plaintiffs demand judgment against the Defendants in the amount of $5,000,000.00 (or such other amount as may be proved at trial) in compensatory damages; in the amount of $20,000,000.00 in punitive damages due to the wanton and intentionally wrongful conduct of Defendants; in the amount of actual and/or statutory damages as applicable under the Fair

Debt Collection Practices Act; and Plaintiffs' reasonable attorney fees, costs and expenses incurred in this proceeding and/or otherwise caused by Defendants' wrongful conduct.

The Plaintiffs also move this Honorable Court for issuance of a ex parte temporary restraining order against Defendant Regions Bank prohibiting it from foreclosing on the Property; to enter a preliminary injunction upon a hearing; and to enter a permanent injunction upon final hearing prohibiting Defendant from foreclosing on the Property.

Dated: April 20, 2012

Respectfully submitted,

/s/ Russell C. Balch

Russell C. Balch (BAL025)
Attorney for Plaintiffs
AKRIDGE & BALCH, P.C.
852 N. Dean Road, Suite 100
P.O. Drawer 3738
Auburn, AL 36830
(334) 887-0884
rbalch@akridgebalch.com

**Jury Demand**

Plaintiffs demand a trial by struck jury of all issues and claims which are so triable.

/s/ Russell C. Balch
Attorney for Plaintiffs

VERIFICATION

I the undersigned, having been duly sworn, hereby state that we are the Plaintiffs/Petitioners in the above-styled cause, that we have read the foregoing Petition, and that all allegations therein are true and correct based upon our best knowledge, information, and belief.

Thomas M. Hayley

Amy Elizabeth Hayley

**STATE OF ALABAMA**
**COUNTY OF LEE**

I, the undersigned authority, a Notary Public in and for said County, in said State, hereby certify that **Thomas M. Hayley**, whose name is signed to the foregoing Agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of the Agreement, she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 20th day of April, 2012.

(NOTARY SEAL)

Cindy Brooks
Notary Public
My Commission Expires: May 22, 2013

**STATE OF ALABAMA**
**COUNTY OF LEE**

I, the undersigned authority, a Notary Public in and for said County, in said State, hereby certify that **Amy Elizabeth Hayley**, whose name is signed to the foregoing Agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of the Agreement, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 20th day of April, 2012.

(NOTARY SEAL)

Cindy Brooks
Notary Public
My Commission Expires: May 22, 2013

ELECTRONICALLY FILED
4/20/2012 11:09 AM
CV-2012-900026.00
CIRCUIT COURT OF
TALLAPOOSA COUNTY, ALABAMA
PATTI LUCAS, CLERK

# REGIONS BANK

## EQUITY ASSETLINE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $400,000.00 | 11-23-2005 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THOMAS M HAYLEY (SSN: 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)
1809 S UNIVERSITY DR
AUBURN, AL 36830-5237

**Lender:** REGIONS BANK
MOORES MILL ROAD
2154 MOORES MILL ROAD
AUBURN, AL 36831

**CREDIT LIMIT: $400,000.00** **DATE OF AGREEMENT: November 23, 2005**

**Introduction.** This Equity AssetLine Agreement ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through REGIONS BANK. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean REGIONS BANK. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay REGIONS BANK, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue as follows: five (5) years from the date of your original Equity AssetLine Agreement (except to the extent a Change in Terms Agreement specifically extends the term of your Credit Line). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable at the end of this term. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Alabama, following the expiration of the right to cancel, the perfection of the Mortgage, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: five (5) years from the date of your original Equity AssetLine Agreement (except to the extent a Change in Terms Agreement specifically extends the term of your Credit Line). You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES. You will make 60 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment.

In any event, if your Credit Line balance falls below $50.00, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon termination in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges; then to any voluntary credit life and disability insurance premiums; then to unpaid principal; and then to late charges and other charges.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 1:00 P.M. Local Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Four Hundred Thousand & 00/100 Dollars ($400,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Mortgage covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Mortgage or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Mortgage for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Equity AssetLine Special Draft" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

**Requests By Mail.** Requesting an advance by mail.

**Requests In Person.** Requesting a credit advance in person at any of our authorized locations.

**Other Methods.** Online Advances.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Equity AssetLine Special Drafts in the following circumstances:

Credit Limit Violation. Your Credit Limit has been or would be exceeded by paying the Equity AssetLine Special Draft.

Postdated Checks. Your Equity AssetLine Special Draft is post-dated. If a post-dated Equity AssetLine Special Draft is paid and as a result any other check is returned or not paid, we are not responsible.

Stolen Checks. Your Equity AssetLine Special Drafts have been reported lost or stolen.

Unauthorized Signatures. Your Equity AssetLine Special Draft is not signed by an "Authorized Signer" as defined below.

Termination or Suspension. Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Equity AssetLine Special Draft.

Transaction Violation. Your Equity AssetLine Special Draft is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Equity AssetLine Special Draft.

Other Restriction. Advances may be requested either by the Borrower or the Co-Borrower.

If we pay any Equity AssetLine Special Draft under these conditions, you must repay us, subject to applicable laws, for the amount of the Equity AssetLine Special Draft. The Equity AssetLine Special Draft itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Equity AssetLine Special Drafts along with your periodic billing statements; however, your use of each Equity AssetLine Special Draft will be reflected on your periodic statement as a credit advance. We do not "certify" Equity AssetLine Special Drafts drawn on your Credit Line.

Transaction Requirements. The following transaction limitations will apply to the use of your Credit Line:

Credit Line Equity AssetLine Special Draft and Request By Mail Limitations. The following transaction limitations will apply to your Credit Line and the writing of Equity AssetLine Special Drafts and requesting an advance by mail.

Minimum Advance Amount. The minimum amount of any credit advance that can be made on your Credit Line is $100.00. This means any Equity AssetLine Special Draft must be written for at least the minimum advance amount.

Other Transaction Requirements. You may request an Advance by writing and negotiating an Equity AssetLine special draft. Upon our receipt of the draft, we will make an Advance to pay your draft. We will not return to you special drafts we have paid. We will provide copies of any draft you request. You agree to pay our reasonable charge for providing copies of any drafts. You may request an Advance by writing a letter to Regions Bank at the address shown on your monthly statement. You should tell us your Equity AssetLine account number and your deposit account number. We will mail you a deposit slip reflecting the deposit.

Telephone Request and In Person Request Limitations. The following transaction limitations will apply to your Credit Line and requesting an advance by telephone and requesting an advance in person.

Minimum Advance Amount. The minimum amount of any credit advance that can be made on your Credit Line is $100.00.

Other Transaction Requirements. You may request an Advance by telephoning your loan officer. You must identify yourself to the satisfaction of your loan officer, or some other loan officer who personally knows you. The Advance will be deposited into your deposit account. If you do not know the name of your loan officer, you may call Regions Bank at the number shown on your monthly statement for this information. You are responsible for knowing your loan officer. You may request an Advance in person during normal business hours at any of our facilities which accept personal requests for Advances. You must identify yourself to our satisfaction. The Advance may be deposited into your deposit account.

Other Methods Limitations. The following transaction limitations will apply to your Credit Line and accessing by other methods.

Other Transaction Requirements. If you have enrolled in Regions Online Banking, requesting a credit advance via electronic instructions through Regions Online Banking, subject to the terms of the Regions Online Banking Agreement and Disclosure Statement in effect from time to time. You agree that we do not accept responsibility for the authenticity of electronic instructions received [illegible] requests received through Regions Online Banking, including any fraudulent or unauthorized instructions or requests, when acting upon such instructions or requests believed to be genuine.

Authorized Signers. The words "Authorized Signer" on Equity AssetLine Special Drafts as used in this Agreement mean and include each person who: (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

Lost Equity AssetLine Special Drafts. If you lose your Equity AssetLine Special Drafts or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (800) 734-4667. You also can notify us at our address shown at the beginning of this Agreement.

Future Credit Line Services. Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

Collateral. You acknowledge this Agreement is secured by Real Estate Mortgage dated 11-23-2005 from borrower covering Real Estate located at 140 COLLINS DRIVE, DADEVILLE, AL.

Insurance. You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

Right of Setoff. To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

Periodic Statements. If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

When FINANCE CHARGES Begin to Accrue. Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed. A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us the "daily balance."

Method of Determining the Amount of FINANCE CHARGE. Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic FINANCE CHARGES for each day in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay FINANCE CHARGES, not calculated by applying a Periodic Rate, as set forth below:

Additional Finance Charges. The following additional FINANCE CHARGES will be charged to your Credit Line or paid in cash:

| FLOOD CERTIFICATION FEE | | |
|---|---|---|
| | In Cash | $4.50 |

Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE. We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. Initially, we will apply the discounted rates shown herein. Thereafter, we start with an independent index which is the "Prime Rate" as published in the "Money Rates" column in The Wall Street Journal on the first business day of the month, which is identified in that column as "The base rate on corporate loans posted by at least 75% of the Nation's largest banks." (the "Index"). We will us[illegible]st recent Index value available to us as of the first business day of the month for any ANNUAL PERCENTAGE RATE adjustment. The In[illegible]ot necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line

Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your account, we take the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the index will take effect monthly, on the first day of your billing cycle. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the lesser of 18.000% or the maximum rate allowed by applicable law. Today the index is 7.000% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

Rates During the Discount Period

| Term of Discount Range of Balances | Discounted Rate | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| First 4 payments | | | |
| All Balances | [illegible] | 5.900% | [illegible] |

The term of the discount period is 4 payments.

However, in any event, the discount period will end four months after the Opening Date, regardless of whether 4 payments have been made or become due and payable within such time.

Current Non-discounted Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.000% | 7.000% | 0.01918% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

Conditions Under Which Other Charges May Be Imposed. You agree to pay all the other fees and charges related to your Credit Line as set forth below:

Annual Maintenance Fee. A nonrefundable Annual Maintenance Fee of $50.00 will be charged to your Credit Line at the following time: On the anniversary of your credit line.

Returned Items. You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

Late Charge. Your payment will be late if it is not received by us within 10 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you 5.000% of the unpaid amount of the payment or $100.00, whichever is less.

Security Interest Charges. You agree to pay all security interest charges related to your Credit Line as set forth below:

| | |
|---|---|
| TITLE/DEED REPORT | $225.00 |
| RECORDING FEES | $102.40 |
| HOME EQUITY LOAN INSURANCE | $30.00 |
| APPRAISAL | $35.00 |
| Total | $392.00 |

Lender's Rights. Under this Agreement, we have the following rights:

Termination and Acceleration. We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

Suspension or Reduction. In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

Change in Terms. We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the index is no longer available, we will choose a new index and margin. The new index will have an historical movement substantially similar to the original index, and the new index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

Collection Costs. We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

Access Devices. If your Credit Line is suspended or terminated, you must immediately return to us all Equity AssetLine Special Drafts and any other access devices. Any use of Equity AssetLine Special Drafts or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Equity AssetLine Special Drafts or other Credit Line access devices not returned to us.

Delay in Enforcement. We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Equity AssetLine Special Drafts and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Regions Bank, P.O. Box 4097 Montgomery, AL 36103-4097.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Jury Waiver.** We and you hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either us or you against the other.

**Requests for Special Services.** In general, there are no borrower-paid fees associated with the routine servicing of a loan or line of credit. Borrower, however, may occasionally find it necessary to request services for which there is a charge. The services that fall outside of routine servicing include, without limitation, providing the following documents upon request: amortization schedules, duplicate year-end statements, copies of loan documents or periodic statements, payment histories, and replacement coupon books. Borrower agrees to pay the fees imposed by Lender in connection with providing the requested services, as in effect from time to time. Borrower also agrees to pay facsimile or other fees imposed by Lender if these services are requested on an expedited basis. All such fees shall be fully earned and non-refundable, and shall be paid upon Lender's demand (provided, that Lender, in its discretion, may add the fees to the principal indebtedness due, and accrue interest thereon, and the same shall be due, if not sooner demanded by Lender, upon the maturity of the indebtedness without further demand). The fees shall not be deemed to be interest or charges for the use of money. If Borrower requests services or documents as part of Lender's procedures for resolving a billing error on a line of credit, Lender will not impose, or will reverse, the fee.

**Addendum to Receipt of Payments.** Automatic payment is not required for this line of credit. If you choose, we will deduct your minimum monthly payment from your checking account after the closing date and show the payment on your next periodic statement. If your checking account has insufficient funds to make the payment, you must make the payment yourself within twenty-five (25) days of the closing date shown on your periodic statement.

**Finance Charges / Fees Paid in Cash.** All finance charges and/or fees denoted as "paid in cash" will be paid by Regions Bank.

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of Alabama.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Mortgage, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Arbitration.** You and we agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What You Should Know About Home Equity Lines of Credit," given with the application.

This Agreement is dated November 23, 2005.

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

X [illegible] (Seal)
THOMAS M HAYLEY

Effective Disbursement Date: ____________________

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

Regions Bank
P.O. Box 4597
Montgomery, AL 36103-4597

or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

[illegible]



EXHIBIT

"B"

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

*0004850150000018002657500000*

# MORTGAGE

## THIS IS A FUTURE ADVANCE MORTGAGE

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $400,000.00.

**THIS MORTGAGE** dated November 23, 2005, is made and executed between **THOMAS MATTHEW HAYLEY aka THOMAS M HAYLEY**, whose address is **1695 E UNIVERSITY DR, AUBURN, AL 36830-5237** and **AMY ELIZABETH STYES HAYLEY**, whose address is **1695 E UNIVERSITY DR, AUBURN, AL 36830-5237; HUSBAND AND WIFE** (referred to below as "Grantor") and **REGIONS BANK**, whose address is **2164 MOORES MILL ROAD, AUBURN, AL 36831** (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, grants, bargains, sells and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in **TALLAPOOSA** County, State of Alabama:

**See ATTACHED EXHIBIT A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.**

The Real Property or its address is commonly known as **149 COLLINS DRIVE, DADEVILLE, AL 36853.**

**REVOLVING LINE OF CREDIT.** This Mortgage secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Alabama law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of your credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, terminates the credit line account by notifying Lender as provided in the Credit Agreement, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Mortgage if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Borrower's or Grantor's income, assets, liabilities, or any other aspects of Borrower's or Grantor's financial condition. (B) Borrower does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Lender will be authorized to take possession of the Property and, with or without taking such possession, after giving

notice of the time, place and terms of sale, together with a description of the Property to be sold, by publication once a week for three (3) successive weeks in some newspaper published in the county or counties in which the Real Property to be sold is located, to sell the Property (or such part or parts thereof as Lender may from time to time elect to sell) in front of the front or main door of the courthouse of the county in which the Property to be sold, or a substantial and material part thereof, is located, at public outcry, to the highest bidder for cash. If there is Real Property to be sold under this Mortgage in more than one county, publication shall be made in all counties where the Real Property to be sold is located. If no newspaper is published in any county in which any Real Property to be sold is located, the notice shall be published in a newspaper published in an adjoining county for three (3) successive weeks. The sale shall be held between the hours of 11:00 a.m. and 4:00 p.m. on the day designated for the exercise of the power of sale under this Mortgage. Lender may bid at any sale had under the terms of this Mortgage and may purchase the Property if the highest bidder therefore. Grantor hereby waives any and all rights to have the Property marshalled. In exercising Lender's rights and remedies, Lender will be free to sell all or any part of the Property together or separately, in one sale or by separate sales.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Arbitration.** Borrower and Grantor and Lender agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Mortgage or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Mortgage shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Alabama.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding

upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Alabama as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means THOMAS M HAYLEY and includes all co-signers and co-makers signing the Credit Agreement.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated November 28, 2006, with credit limit of $400,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is . NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means THOMAS MATTHEW HAYLEY aka THOMAS M HAYLEY and AMY ELIZABETH STYES HAYLEY.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means REGIONS BANK, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

**THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**GRANTOR:**

X [signature] (Seal)
THOMAS MATTHEW HAYLEY aka THOMAS M HAYLEY

X [signature] (Seal)
AMY ELIZABETH STYES HAYLEY

This Mortgage prepared by:

Name: TERRY LANG OWEN
Address: 2154 MOORES MILL ROAD
City, State, ZIP: AUBURN, AL 36831

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ______________________ )
) SS
COUNTY OF ______________________ )

I, the undersigned authority, a Notary Public in and for said county in said state, hereby certify that THOMAS MATTHEW HAYLEY aka THOMAS M HAYLEY and AMY ELIZABETH STYES HAYLEY, HUSBAND AND WIFE, whose names are signed to the foregoing instrument, and who are known to me, acknowledged before me on this day that, being informed of the contents of said Mortgage, they executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this ____________ day of ______________________, 20____.

______________________
Notary Public

My commission expires ______________________

[illegible] All Rights Reserved. [illegible]



Gmail

Hayley-Redd Development <hayredd@gm...

# Thomas Hayley renewal

4 messages

---

**Hayley-Redd Development <hayredd@gmail.com>** — **Fri, Apr 22, 2011 at 8:29 AM**
To: rhett.moncrief@regions.com, "Terri.Porter@regions.com" <terri.porter@regions.com>

Rhett,

Good Morning.

Would you please update me on where we are on the Hayley Family renewal? I am receiving collection calls from Regions Bank and the matured loan is negatively affecting Tom's credit report. Is there any way possible that we could get this resolved next week?

Thank you,

Cindy Brooks
Hayley-Redd Development Company
1686 East University Drive
Auburn, AL 36830

334-821-6624
334-821-6630 FAX

---

**Mail Delivery Subsystem <mailer-daemon@googlemail.com>** — **Fri, Apr 22, 2011 at 8:29 AM**
To: hayredd@gmail.com

Delivery to the following recipient failed permanently:

rhett.moncrief@regions.com

Technical details of permanent failure:
Google tried to deliver your message, but it was rejected by the recipient domain. We recommend contacting the other email provider for further information about the cause of this error. The error that the other server returned was: 550 550 no such user - psmtp (state 17).

----- Original message -----

Received: by 10.204.134.207 with SMTP id k15mr949569bkt.135.1303478988162;
Fri, 22 Apr 2011 06:29:48 -0700 (PDT)
MIME-Version: 1.0
Received: by 10.204.102.135 with HTTP; Fri, 22 Apr 2011 06:29:20 -0700 (PDT)
From: Hayley-Redd Development <hayredd@gmail.com>
Date: Fri, 22 Apr 2011 08:29:28 -0500
Message-ID: <BANLkTim_0=358Av_d.D5DBInV-B7zSU1w@mail.gmail.com>
Subject: Thomas Hayley renewal
To: rhett.moncrief@regions.com,
"Terri.Porter@regions.com" <terri.porter@regions.com>
Content-Type: text/plain; charset=ISO-8859-1
[Quoted text hidden]

---

**Hayley-Redd Development <hayredd@gmail.com>** — **Fri, Apr 22, 2011 at 8:31 AM**

To: "Terri.Porter@regions.com" <terri.porter@regions.com>

Terri,

I cannot get emails to go through to Rhett...Would you be so kind as to forward this to him?

Thank you...

Cindy

---------- Forwarded message ----------
From: Hayley-Redd Development <hayredd@gmail.com>
Date: Fri, Apr 22, 2011 at 8:29 AM
Subject: Thomas Hayley renewal
To: rhett.moncrief@regions.com, "Terri.Porter@regions.com" <terri.porter@regions.com>

[Quoted text hidden]
--
[Quoted text hidden]

---

Terri.Porter@regions.com <Terri.Porter@regions.com> Fri, Apr 22, 2011 at 8:44 AM
To: Hayley-Redd Development <hayredd@gmail.com>

No problem. He is Rett.Moncrief@regions.com (no h).

Terri Porter
Community Banking Assistant
Regions Bank
Lee County
334.821.5850 Office
334.821.3233 Fax

From: Hayley-Redd Development <hayredd@gmail.com>
To: "Terri.Porter@regions.com" <terri.porter@regions.com>
Date: 04/22/2011 08:41 AM
Subject: Fwd: Thomas Hayley renewal

[Quoted text hidden]

---

 Hayley-Redd Development <hayredd@gmail.com>

# Just following up

Hayley-Redd Development <hayredd@gmail.com> Mon, Apr 4, 2011 at 2:00 PM
To: "Terri.Porter@regions.com" <terri.porter@regions.com>

Terri,

Happy Monday.

Any word on Tom's renewal?

Thanks,

Cindy Brooks
Hayley-Redd Development Company
1665 East University Drive
Auburn, AL 36830

334-821-6624
334-821-6630 FAX

Gmail

Hayley-Redd Development <hayredd@gmail.com>

# Hayley Family closing

2 messages

**Hayley-Redd Development <hayredd@gmail.com>** Fri, Mar 25, 2011 at 2:24 PM
To: "Terri.Porter@regions.com" <terri.porter@regions.com>

Good Afternoon,

Just checking to see if you had heard anything. Rhett has not called
Tom yet, so I thought I would check with you.

Thanks,

Cindy Brooks
Hayley-Redd Development Company
1666 East University Drive
Auburn, AL 36830

334-821-8824
334-821-5630 FAX

**Terri.Porter@regions.com <Terri.Porter@regions.com>** Fri, Mar 25, 2011 at 2:56 PM
To: Hayley-Redd Development <hayredd@gmail.com>

Cindy,

Rett has submitted a rate exception. We should know something by EOB today or Monday.

Terri Porter
Community Banking Assistant
Regions Bank
Lee County
334.821.5650 Office
334.821.3233 Fax

From: Hayley-Redd Development <hayredd@gmail.com>
To: "Terri.Porter@regions.com" <terri.porter@regions.com>
Date: 03/25/2011 02:24 PM
Subject: Hayley Family closing

[Quoted text hidden]



Hayley-Redd Development <hayredd@gmail.com>

# Loan renewal

5 messages

**Hayley-Redd Development <hayredd@gmail.com>** Thu, Mar 3, 2011 at 7:58 AM
To: "Terri.Porter@regions.com" <terri.porter@regions.com>

Terri,

Good Morning,

Just checking to see if we have a date that we can renew Tom's loan (the Hayley Family $400k Line of Credit). This is showing up past due in his credit report and we are past ready to get renewed. As I am sure Regions is...

Thanks,

Cindy Brooks
Hayley-Redd Development Company
1695 East University Drive
Auburn, AL 36830

334-821-6524
334.821.6830 FAX

---

**Terri.Porter@regions.com <Terri.Porter@regions.com>** Thu, Mar 3, 2011 at 8:00 AM
To: Hayley-Redd Development <hayredd@gmail.com>

Cindy,

I'm still working on it. We are CLOSE. I'll touch base later today after I'm able to check on it again.

Terri Porter
Community Banking Assistant
Regions Bank
Lee County
334.821.6850 Office
334.821.6233 Fax

**************Please note - I will be out of the office 3/10-3/14, returning on 3/15******************

From: Hayley-Redd Development <[illegible]>
To: "[illegible]" <[illegible]>
Date: 03/03/2011 07:58 AM
Subject: Loan renewal

---

[Quoted text hidden]

---

**Terri.Porter@regions.com <Terri.Porter@regions.com>** Thu, Mar 3, 2011 at 4:20 PM
To: Hayley-Redd Development <hayredd@gmail.com>

OK Cindy - How's this for getting back to you at the end of the day. We are waiting on one piece of information that should be in tomorrow. If it is then it will be reviewed and we should be able to close the first of next week. Woo Hoo!!!!!!!!!!

I'll let you know what else I hear...

Terri Porter
Community Banking Assistant
Regions Bank
Lee County
334.821.5850 Office
334.821.3233 Fax

**********Please note - I will be out of the office 3/10-3/14, returning on 3/15 **********

From: Hayley-Redd Development <hayredd@gmail.com>
To: "Terri.Porter@regions.com" <terri.porter@regions.com>
Date: 03/03/2011 07:38 AM
Subject: Loan renewal

---

[Quoted text hidden]

---

Terri.Porter@regions.com <Terri.Porter@regions.com> Tue, Mar 8, 2011 at 1:47 PM
To: Hayley-Redd Development <hayredd@gmail.com>

Cindy,

I think we are "that close" to having this ready to close. Is there a day next week that will work for Tom to go to Nancy's office? Let me know so we can get it set up.

Thanks,

Terri Porter
Community Banking Assistant
Regions Bank
Lee County
334.821.5850 Office
334.821.3233 Fax

**********Please note - I will be out of the office 3/10-3/14, returning on 3/15 **********

From: Hayley-Redd Development <hayredd@gmail.com>
To: "Terri.Porter@regions.com" <terri.porter@regions.com>
Date: 03/03/2011 07:08 AM
Subject: Loan renewal

---

[Quoted text hidden]

Hayley-Redd Development <hayredd@gmail.com> Tue, Mar 8, 2011 at 2:12 PM
To: Terri.Porter@regions.com

He will be in town all week...Why don't we shoot for Tuesday morning, if that is good with Nancy's office?

Thanks,
Cindy
[Quoted text hidden]
--
[Quoted text hidden]

Gmail Hayley-Redd Development <hayredd@gmail.com>

# Loan renewal

Terri.Porter@regions.com <Terri.Porter@regions.com> Thu, Mar 3, 2011 at 4:20 PM
To: Hayley-Redd Development <hayredd@gmail.com>

OK Cindy - Hows this for getting back to you at the end of the day. We are waiting on one piece of information that should be in tomorrow. If it is then it will be reviewed and we should be able to close the first of next week. Woo Hoo!!!!!!!!!!!!

I'll let you know what else I hear...

Terri Porter
Community Banking Assistant
Regions Bank
Lee County
334.821.5850 Office
334.821.3233 Fax

**************Please note - I will be out of the office 3/10-3/14, returning on 3/15 ******************

From: Hayley-Redd Development <[illegible]>
To: "Terri.Porter@regions.com" <[illegible]>
Date: 03/03/2011 07:56 AM
Subject: Loan renewal

[Quoted text hidden]

Hayley-Redd Development <hayredd@gmail.com>

# Deed for Tallapoosa Property Thomas Hayley

4 messages

**Hayley-Redd Development** <hayredd@gmail.com> Thu, Mar 24, 2011 at 9:38 AM
To: "Terri.Porter@regions.com" <terri.porter@regions.com>
Cc: matt.mcdaniel@regions.com

Terri,

Attached, please find a copy of the deed that was filed in 2007 that secured Tom's line of credit. With the "Subject to" clause, if Regions used the same mortgage, which I assumed would happen, why all of these complications?

I know you are the "middle" guy, but I am desperately trying to get this renewed. I may have jury duty next week and, if there is any way possible, it would be best for Tom to close this week. Again, even though we are making a payment every month, this is one loan is pulling Tom's credit score down, significantly.

Thanks,
Cindy Brooks

---------- Forwarded message ----------
From: Jenny Ciccazzo <[illegible]>
Date: Thu, Mar 24, 2011 at 9:07 AM
Subject: Deed for Tallapoosa Property
To: Hayley-Redd Development <hayredd@gmail.com>

Attached is the deed from Thomas M. Hayley to Hayley Family Partnership, LTD.

*Jenny Ciccazzo*

*Nancy Davis Law Firm, P.C.*

*324 East Magnolia Avenue*

*Auburn, AL 36830*

*Office:* [illegible]

*Fax:* [illegible]

Hayley-Redd Development Company
1055 East University Drive
Auburn, AL 36830

[illegible]
[illegible] FAX

lm66201103240938.PDF
180K

**Mail Delivery Subsystem <mailer-daemon@googlemail.com>** **Thu, Mar 24, 2011 at 9:36 AM**
To: hayredd@gmail.com

**Delivery to the following recipient failed permanently:**

[illegible]

**Technical details of permanent failure:**
**Google tried to deliver your message, but it was rejected by the recipient domain. We recommend contacting the other email provider for further information about the cause of this error. The error that the other server returned was: 550 550 No such user - psmtp (state 17).**

**----- Original message -----**

**Received: by 10.204.35.18 with SMTP id n18mr643248bkd.91.1300977408273; Thu, 24 Mar 2011 07:36:48 -0700 (PDT)**
**MIME-Version: 1.0**
**Received: by 10.204.16.82 with HTTP; Thu, 24 Mar 2011 07:36:28 -0700 (PDT)**
**From: Hayley-Redd Development <hayredd@gmail.com>**
**Date: Thu, 24 Mar 2011 09:36:28 -0500**
**Message-ID: <AANLkTi=I58JQ8h381atVmHtFVKnPhUmtT=[illegible]@mail.gmail.com>**
**Subject: Deed for Tallapoosa Property Thomas Hayley**
**To: "Tarri.Porter@regions.com" <tarri.porter@regions.com>**
**Cc: [illegible]**
**Content-Type: multipart/mixed; boundary=00032555e6c047f005049f3b68af**

[illegible]

**Hayley-Redd Development <hayredd@gmail.com>** **Thu, Mar 24, 2011 at 9:40 AM**
**To: "Tarri.Porter@regions.com" <tarri.porter@regions.com>**

**---------- Forwarded message ----------**
**From: Hayley-Redd Development <hayredd@gmail.com>**
**Date: Thu, Mar 24, 2011 at 9:36 AM**
**Subject: Deed for Tallapoosa Property Thomas Hayley**
**To: "Tarri.Porter@regions.com" <tarri.porter@regions.com>**
Cc: [illegible]

[illegible]

[illegible]

M55201103240938.PDF
100K

Terri.Porter@regions.com <Terri.Porter@regions.com> Thu, Mar 24, 2011 at 9:43 AM
To: Hayley-Redd Development <hayredd@gmail.com>

Cindy,

Cindy,

Everything is approved and ready to close. The only holdup right now is the rate is not acceptable - it was approved at Prime + 6% and we know that is unacceptable. Unfortunately it isn't something we can "fix" in house - we have to get 2nd and 3rd approvals on lowering a rate that much, but that takes time.

We are diligently working on it.

Terri Porter
Community Banking Assistant
Regions Bank
Lee County
[illegible] Office
[illegible] Fax

From: Hayley Redd Development [illegible]
To: [illegible]
Cc: [illegible]
Date: 03/24/2011 08:30 AM
Subject: Deed for Tallapoosa Property Thomas Hayley

[illegible]

[illegible]

*Jenny Ciccazzo*

[illegible]

***324 East Magnolia Avenue***

***Auburn, AL 36830***

***Office: (334) 821-[illegible]***

***Fax: (334) 821-[illegible]***

[illegible] FAX[attachment "im55201103240938.PDF" deleted by Terri J Porter/Consumer Banking/REGIONS]

Hayley-Redd Development <hayredd@gmail.com> Thu, Mar 24, 2011 at 10:46 AM
To: Terri.Porter@regions.com

March 24, 2011

Terri,

I appreciate all your hard work regarding the line of credit renewal collateralized by my home at Lake Martin. I had remembered getting permission from Regions to change the deed from my personal name to Hayley Family Limited Partnership. It is my understanding Cindy has sent you the deed. It is my further understanding that the "holdup" was because the present mortgage titled under Tom Hayley was going to have to be changed to HFP. Hopefully, that does not have to occur and the related closing expenses can be saved.

We have continued to reduce the LOC every month since the renewal became due in October. The problem I'm having is that Regions Bank continues to report this to credit services, and my credit score is being affected. And until I can get this renewed, it's having a negative impact on other business.

I know that the world economy is challenging, but this has gone on for six months, and I really need your help to bring this to closure. Can you please make me or Cindy aware of what we can do to expedite this renewal? Also, can you arrange for this debacle not to be reported as past due on my credit report, and to remove these "bad hits?"

Sincerely,

Tom Hayley



**LONGSHORE, BUCK & LONGSHORE, P. C.**
ATTORNEYS AT LAW
LONGSHORE BUILDING
[illegible] SECOND AVENUE NORTH
BIRMINGHAM, ALABAMA [illegible]

W. L. LONGSHORE, [illegible]
W. L. LONGSHORE, III
THOMAS W. H. BUCK

A. R. LONGSHORE (1854-1930)
W. L. LONGSHORE (1893-1971)

WWW.LONGSHOREBUCK.COM
[illegible]
1-800-489-7661
FAX [illegible]

March 29, 2012

Mr. and Mrs. Tom M. Hayley
1695 E. University Dr.
Auburn, AL 36830

Re: HAYLEY, Thomas Mathew and Amy Elizabeth Styes
Property address: 149 Collins Drive
Dadeville, AL 36853
Loan No.: 0001-601-150026573

Dear Mr. and Mrs. Hayley:

Your mortgage has been referred to us by Regions Bank for foreclosure due to a default in the terms of the Note and Mortgage. The entire debt has been accelerated due to this default.

We furnish you the following information:

1. As of the date of this letter, you owe $369,109.27. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-489-7661.
2. The name of the creditor is Regions Bank (serviced by same).
3. Unless you dispute the validity of the above debt or any portion thereof within 30 days from the receipt of this notice, then the debt will be assumed to be valid.
4. If you notify me in writing within 30 days from the receipt of this notice that you dispute the above debt or any portion thereof, I will obtain a verification of this debt from the creditor and will mail you such confirmation.
5. Upon your written request within the aforesaid 30-day period, we will furnish you the name and address of the original creditor if it is different from the current creditor.

March 29, 2012
Mr. and Mrs. Tom M. Hayley
Loan No.: 0001-501-150026573
Page 2

You will find enclosed herewith a Notice of Mortgage Foreclosure Sale, which will be held on May 1, 2012.

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Very truly yours,

LONGSHORE, BUCK & LONGSHORE, P.C.

W.L. Longshore, III

WLL, III:yo

Enclosure

xc: Property address

Russell C. Balch
Akridge & Balch, P.C.
Attorneys at Law
P.O. Box 3738
Auburn, AL 36831-3738

Regions Bank

**MORTGAGE FORECLOSURE SALE**

Default having been made in the payment of the indebtedness secured by that certain mortgage executed by Thomas Matthew Hayley aka Thomas M. Hayley and Amy Elizabeth Styes Hayley, husband and wife, to Regions Bank on the 23rd day of November, 2005, being recorded in Volume 210924, and assumption agreement filed therewith recorded in Instrument 225719, in the Office of the Judge of Probate of Tallapoosa County, Alabama, whereby Hayley Family Partnership, LTD assumed the debt along with the original mortgagors.

The undersigned Regions Bank, as mortgagee, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for cash, in front of the main entrance of the Court House at Dadeville, Tallapoosa County, Alabama, on the 1st day of May, 2012, during the legal hours of sale, the following real estate, situated in Tallapoosa County, Alabama, to-wit:

PARCEL ONE:

Lot 16-A, according to the Survey of Susannah Crossing Subdivision, as recorded in Plat Book 7, page 154, in the Probate Office of Tallapoosa County, Alabama.
Subject to easements and restrictions as set forth on said plat and as recorded at Card No. 56826, in the Probate Office of Tallapoosa County, Alabama. Lot 16-A is two parcels on either side of Collins Cove Road pursuant to the aforesaid plat.

PARCEL TWO:

A parcel of land lying in Section 26, Township 21 North, Range 22 East, Tallapoosa County, Alabama; said parcel being more particularly described as follows: To reach a point of beginning commence at the Northwest corner of Section 26, Township 21 North, Range 22 East; thence South 01°52'08" East, 332.27 feet to a point; thence North 87°26'52" East, 206.79 feet to the Northeast corner of Lot 17, Susannah Crossing as recorded in Plat Book 7, page 142, in the Office of the Judge of Probate of Tallapoosa County, Alabama; thence North 87°58'36" East, 127.41 feet to the point of beginning of the parcel of land herein described; thence from said point of beginning North 87°58'36" East, 160.43 feet to the Northwest corner of Lot 16-A of a resurvey of Lots 1, 8, 9, 15 and 16, Susannah Crossing, as recorded in Plat Book 7, at page 154; thence South 00°48'00" West along the West line of said Lot 16-A, 232.48 feet to a point in the Northeasterly right of way line of Collins Cove Road (80 feet wide); thence North 68°52'52" West, along the Northeasterly right of way of said road, 164.23 feet to a point; thence North 01°22'25" West, 167.67 feet to the point of beginning.

This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

REGIONS BANK,
Mortgagee

W. L. LONGSHORE, III
Attorney for Mortgagee
LONGSHORE, BUCK & LONGSHORE, P.C.
The Longshore Building
2009 Second Avenue North
Birmingham, Alabama 35203-3703
Phone: 205-252-7661

April 5, 12 and 19, 2012
Dadeville Record